**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| TWANNA HENRY, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff(s), | ) ) |
| vs. | ) Case No. 4:20-cv-01865-SRC ) |
| VANTAGE CREDIT UNION, et al., | ) ) |
| Defendant(s). | ) ) ) |

**Memorandum and Order**

Plaintiff Twanna Henry purports to have uncovered an agreement between a car dealership, EH LLC d/b/a Honda of Frontenac, and an automobile financing company, Vantage Credit Union, to secretly mark up interest rates. Henry filed a class action suit, but Vantage and the members of its board of directors named as defendants claim she agreed with Honda of Frontenac to individual arbitration of her claims and that Honda of Frontenac assigned its right to arbitration to Vantage, and thus move to compel Henry to arbitration. In ruling on Defendants' motion, the Court must resolve whether Henry agreed to arbitrate, focusing on whether Vantage holds Honda of Frontenac's right to compel arbitration.

**I.     Facts and background**

On December 5, 2013, Henry purchased a Dodge Challenger from Honda of Frontenac. Doc. 32 at p. 2. In completing the purchase, Henry executed a number of documents, including a Retail Buyers Order, a Retail Installment Contract and Security Agreement, a Vehicle Service Contract, and a GAP insurance enrollment. *Id.*; *see also* Doc. 25-1 at pp. 12-13, 16-19. Henry executed these documents with a representative of Honda of Frontenac. Doc. 32 at p. 2.

1

The Buyers Order identifies Henry as the "Purchaser," lists the purchase price, and states that Henry "hereby agree[s] to purchase" the automobile from Honda of Frontenac "under the terms and conditions specified[.]" Doc. 25-1 at p. 12. Henry signed the Buyers Order on December 5, 2013. *Id*. The Buyers Order states in boldface, capital letters above the signature:

> **THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES.**

*Id*. Henry signed the line immediately below this language. *Id*. Just below her signature is the arbitration clause itself, titled "**ARBITRATION**," in boldface, capital letters. *Id*. The clause states:

> MANDATORY ARBITRATION OF DISPUTES. ANY CLAIM, CONTROVERSY OR DISPUTE OF ANY KIND BETWEEN THE CUSTOMER AND THE COMPANY ARISING OUT OF OR RELATED TO THIS AGREEMENT (WHETHER BASED ON CONTRACT, TORT, STATUTE, FRAUD, MISREPRESENTATION OR ANY OTHER LEGAL OR EQUITABLE THEORY) SHALL BE RESOLVED BY FINAL AND BINDING ARBITRATION, PURSUANT TO THE FOLLOWING TERMS.
>
> a. The Federal Arbitration Act, not state law, shall govern the arbitration process and the question of whether a claim is subject to arbitration. The customer, however, retains the right to take any claim, controversy or dispute that qualifies to small claims court rather than arbitration.
>
> b. A single arbitrator engaged in the practice of law will conduct the arbitration. The arbitration will be selected according to the rules of the American Arbitration Association, or alternatively may be selected by agreement of the parties, who shall cooperate in good faith to select the arbitrator. The arbitration shall be conducted by and under the then-applicable rules of the American Arbitration Association. Any required hearing fees and costs shall be paid by the parties as required by the applicable rules, but the arbitrator shall have the power to apportion such costs as the arbitrator deems appropriate.
>
> c. The arbitrator's decision and award will be final and binding, and judgment on the award rendered by the arbitrator may be entered in any court with jurisdiction.
>
> d. No claim, controversy or dispute may be joined in an arbitration with a claim, controversy or dispute of any other person, or resolved on a class-wide basis. The arbitrator may not award damages that are barred by this Agreement, and

>> the Customer and Company both waive any claims for an award of damages that is excluded under this Agreement.

*Id*.  Henry again signed the Buyers Order just below the arbitration clause.  *Id*.

Henry also executed the Retail Installment Contract and Security Agreement as part of the December 5th purchase.  Doc. 25-1 at pp. 18-19.  The Retail Installment Contract and Security Agreement does not contain an arbitration clause, but does contain agreed terms and conditions regarding financing for the purchase of the vehicle.  *Id*.  Under the section titled "Assignment," the Retail Installment Contract and Security Agreement states that "[t]his Contract and Security Agreement is assigned to VANTAGE CREDIT UNION, the Assignee" under "the terms of the Assignment by Seller section on page 2."  *Id*. at p. 18.  The "Assignment by Seller" section states that Honda of Frontenac sells and assigns its rights in the contract to Vantage, thereby giving Vantage "full power, either in its own name or in Seller's name, to take all legal or other actions which Seller could have taken under this Contract."  *Id*. at p. 19; *see also* Doc. 32 at p. 3.  The Retail Installment Contract and Security Agreement also includes a "Definitions" section, which states "'Contract' refers to this Retail Installment Contract and Security Agreement."  *Id*.  Lastly, the Retail Installment Contract and Security Agreement includes language, sometimes referred to as the "FTC Holder Rule," *see* 16 C.F.R. § 433.2, stating that "any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtains pursuant hereto or with the proceeds hereof."  Doc. 25-1 at p. 19; *see also* Doc. 32 at p. 10.

In December 2020, Henry filed a class action complaint against EH, LLC d/b/a Honda of Frontenac, Vantage Credit Union, and individuals on Vantage's board of directors—Eric Acree, Jerry Eichholz, Dan Dolan, Mark Rudolph, Barbara Evans-Cunningham, Daniel Isom, Toni Martin and William Solomon.  Doc. 1. at ¶¶ 17-26.  Henry alleges that Vantage and Honda of

3

Frontenac entered into an agreement that allowed the dealership to mark up the interest rate on the car loan Vantage offered to Henry, "resulting in [Henry] paying more over the life of the loan than she would have had she been told the actual rate at which Vantage was willing to offer financing." Doc. 32 at p. 1-2; *see also* Doc. 1. Henry asserted a claim for violation of the Missouri Merchandising Practices Act, Mo. Ann. Stat. § 407.020, against all Defendants, and claims for negligence and unjust enrichment against Vantage and the named members of its board of directors. Doc. 32 at p. 1; *see also* Doc. 1. Honda of Frontenac has been dismissed from this matter. Doc. 31.

Vantage and the individual defendants serving on Vantage's board of directors filed a motion to compel individual arbitration of Henry's claims. Doc. 25. With Henry having filed her opposition to the motion, Doc. 32, and Defendants filing a reply, Doc. 33, the motion is now ripe for review.

**II.     Standard**

"Arbitration agreements are governed by the Federal Arbitration Act ("FAA")." *Hoffman v. Cargill Inc.*, 236 F.3d 458, 461 (8th Cir. 2001). The FAA mandates broad enforcement of arbitration provisions:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

4

9 U.S.C. § 4.

The FAA establishes a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Accordingly, "courts must place arbitration agreements on an equal footing with other contracts" and enforce them according to their terms. *Id.* However, "[a] matter should not be sent to arbitration unless there is a valid agreement to arbitrate and the underlying dispute falls within the scope of that agreement." *Northport Health Servs. of Ark., LLC v. Posey*, 930 F.3d 1027, 1030 (8th Cir. 2019) (quoting *Telectronics Pacing Sys., Inc. v. Guidant Corp.*, 143 F.3d 428, 433 (8th Cir. 1998)). "While 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[,] . . . a party who has not agreed to arbitrate a dispute cannot be forced to do so.'" *Id.* (quoting *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001)).

Before compelling arbitration, a district court must determine: "(1) whether there is a valid arbitration agreement exists, and (2) whether the particular dispute falls within the terms of that agreement." *Robinson v. EOR-ARK, LLC,* 841 F.3d 781, 783–84 (8th Cir. 2016) (quoting *Faber v. Menard, Inc.*, 367 F.3d at 1048, 1052 (8th Cir. 2004)). The Court, rather than the arbitrator, decides the question of arbitrability unless the parties "clear[ly] and unmistakabl[y]" delegated that issue to the arbitrator. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (citations omitted). Because "arbitration is a matter of contract," state-law contract principles govern the validity of an arbitration agreement; an arbitration agreement may be "invalidated by generally applicable contract defenses." *Torres v. Simpatico, Inc.*, 781 F.3d 963, 968 (8th Cir. 2015) (citations omitted). "If a valid and enforceable arbitration agreement exists under state-law contract principles, any dispute that falls within the scope of that agreement must be submitted to arbitration." *Id.* (citing *Faber*, 367 F.3d at 1052).

The Eighth Circuit has instructed that a motion to compel arbitration should be "analyzed under a standard akin to [a motion for] summary judgment." *Neb. Mach. Co. v. Cargotec Sols., LLC*, 762 F.3d 737, 741 (8th Cir. 2014). Accordingly, the Court must view the evidence in the light most favorable to the non-moving party, resolving all factual disputes in their favor. *Id.* at 743. The Court may not compel arbitration where there remains any genuine issue of material fact as to whether a valid arbitration agreement exists. *Id.*

### III. Discussion

#### A. Motion to compel arbitration

Defendants move to compel Henry's claims to individual arbitration. Doc. 25. The Court first addresses whether a valid arbitration exists between Henry and Vantage, before then addressing whether the parties have delegated threshold questions of arbitrability to the arbitrator.

##### 1. Valid arbitration agreement

The parties agree that Henry entered into a valid arbitration agreement with Honda of Frontenac. Doc. 32 at pp. 2-6; Doc. 33 at p. 1. The parties also agree that Honda of Frontenac assigned the Retail Installment Contract and Security Agreement to Vantage. *Id.* However, Henry argues that no arbitration agreement exists between her and Vantage. Doc. 32 at pp. 4-5. Henry contends that only the Retail Buyers Order contains an arbitration agreement and that contract is between Henry and the dealership, not Vantage. *Id.* at p. 4. Henry further notes that Honda of Frontenac assigned only the Retail Installment Contract and Security Agreement to Vantage, an agreement that does not contain an arbitration provision. *Id.* at pp. 3, 4-5. Thus, Henry argues that because the dealership never assigned the contract containing the arbitration

6

agreement to Vantage, Vantage lacks Honda of Frontenac's right to compel Henry to arbitration. *Id*. at 4-6.

As stated above, state law governs the validity of an arbitration agreement and Henry's argument has been explicitly rejected in Missouri. *See Boulds v. Chase Auto Finance Corp.*, 266 S.W.3d 847 (Mo. Ct. App. 2008). In *Boulds*, the plaintiff purchased an automobile and signed a contract with the dealership. *Id*. at 849. The contract included a Retail Buyer's Order, an Arbitration Addendum to the Retail Buyer's Order, and a Retail Installment Contract. *Id*. The Retail Installment Contract included a section at the bottom labeled "Assignment." *Id*. The plaintiff filled out this section of the Retail Installment Contract, assigning it to an automobile financing corporation. *Id*. The Retail Installment Contract also included the FTC holder rule, stating "[a]ny holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof . . . ." *Id*. (citing 16 C.F.R. § 433.2).

On appeal, the plaintiff noted that the dealership's assignment to the automobile financing corporation appeared only in the Retail Installment Contract. Thus, she "argue[d] that this means she has no arbitration agreement with [the automobile financing corporation] because the Retail Installment Contract was a separate document and only that document was assigned to the auto financing corporation." *Id*. at 851.

The court rejected this argument. It acknowledged that "nothing in the Retail Installment Contract mention[ed] arbitration[,] but explained that even in absence of explicit incorporation, instruments executed at the same time, by the same contracting parties, for the same purpose, and in the course of the same transaction will be considered and construed together." *Id*. (citing *Jennings v. Todd,* 118 Mo. 296, 24 S.W. 148, 150 (1893); *Keeley v. Indem. Co. of Am.,* 222

7

Mo.App. 439, 7 S.W.2d 434, 437 (1928)).  The plaintiff signed all three documents together and the arbitration agreement stated that it was "part of your contract with the dealer." *Id*.  Thus, the plaintiff's overall contract included all three documents and when the dealership assigned its interest to the automobile financing corporation, the corporation "assumed the contract as [the dealership] had it—including the contract's arbitration agreement." *Id*.

The Court also explained that "the FTC holder rule included in the Retail Installment Contract puts the holder in the shoes of the seller." *Id*. at 852 (citation omitted).  Under the FTC holder rule, the liability of the automobile financing corporation was "subject to the same limitations as [the dealership]." *Id*.  Thus, just as the plaintiff must have arbitrated the dispute with the dealership, it likewise needed to arbitrate the dispute with the automobile financing corporation. *Id*.  After finding that the plaintiff's claim did not fall under any exceptions listed in the arbitration agreement, it concluded that the plaintiff was "left to seek recourse through arbitration." *Id*.

The Missouri Supreme Court later reaffirmed that documents signed together as part of a single purchase and financing transaction must be treated as one agreement, even when one of the documents contains a merger clause and does not reference the document containing the arbitration agreement.  *See Johnson ex rel. Johnson v. JF Enterprises, LLC*, 400 S.W.3d 763, 764, 766–69 (Mo. banc 2013).  The court ultimately reversed the denial of the dealership's motion to compel arbitration of the buyer's claims because the parties executed the arbitration agreement "as part of a single sales transaction" along with a sale agreement and an installment contract. *Id*.

Like the plaintiff in *Bounds*, Henry signed the Retail Buyers Order (containing the arbitration provision) and the Retail Installment Contract and Security Agreement (containing

8

the assignment provision) on the same day. Henry's overall contract therefore included, among other documents, both the Retail Buyers Order and the Retail Installment Contract and Security Agreement. *Boulds*, 266 S.W.3d at 851. When Honda of Frontenac assigned the Retail Installment Contract and Security Agreement to Vantage, Vantage "assumed the contract as [Honda of Frontenac] had it—including the contract's arbitration agreement." *Id*. Moreover, due to the inclusion of the FTC holder rule, Vantage stepped into the shoes of Honda of Frontenac and thus, just as Henry must have arbitrated the dispute with the dealership, she likewise must arbitrate the dispute with Vantage. *Id*.

Henry attempts to distinguish *Boulds* by arguing that the court "erred by failing to consider the language of the assignment clause itself," correctly noting that "[n]owhere in *Boulds* is the language of the assignment clause quoted[.]" Doc. 32 at p. 9. Henry claims that, in contrast to *Boulds*, the precise language of the Retail Installment Contract and Security Agreement limits its scope. The assignment clause at issue states that Honda of Frontenac gave Vantage "full power, either in its own name or in Seller's name, to take all legal or other actions which Seller could have taken under *this Contract*." Doc. 32 at p. 5 (emphasis in original) (quoting Doc. 25 at p. 19.). The Retail Installment Contract and Security Agreement also includes a "Definitions" section, which states "'Contract' refers to this Retail Installment Contract and Security Agreement." Doc. 25-1 at p. 19. Based on this language from Retail Installment Contract and Security Agreement, Henry argues that Honda of Frontenac assigned only that contract to Vantage, and thus did not assign rights the dealership possessed under other, related contracts. *See* Doc. 32 at pp. 6, 10.

The Court finds that Henry takes an overly narrow view of *Boulds*. In *Boulds*, the Court concluded that under the contract as a whole, including all documents signed at the time of

9

purchase, the dealership and the buyer "intended the arbitration agreement to cover all disputes save the exceptions listed in the [arbitration] agreement itself." 266 S.W.3d at 851. In other words, the plaintiff "knew when she signed these documents that if a problem with [the dealership] ever arose, an arbitrator would resolve it." *Id*. Thus, even though the dealership assigned only the Retail Installment Contract to the automobile financing group, the court still concluded the dealership also assigned the arbitration agreement to the dealership. *Id*.

Therefore, as in *Boulds*, even though Honda of Frontenac assigned only the Retail Installment Contract and Security Agreement to Vantage, it also assigned the arbitration agreement to Vantage. Stated differently, Vantage assumed the Retail Installment Contract and Security Agreement as Honda of Frontenac had it, meaning that Vantage could compel Henry to arbitration just as the dealership could. Accordingly, the Court concludes that a valid arbitration agreement exists between Henry and Vantage.

### 2. Delegation of arbitrability

The Court next considers whether Henry's claims fall within the scope of the arbitration. However, Vantage argues that this Court may not consider "whether [Henry's] claims fall within the scope of the arbitration clause and whether the director defendants may enforce that clause," because those questions "are delegated to the arbitrator." Doc. 26 at p. 10. Henry claims that she "challenge[s] the delegation clause" because "no agreement to arbitrate—or delegate—was ever formed between [Henry] and Vantage." Doc. 32 at p. 12.

Before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists. 9 U.S.C. § 2. "But if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019). Here, as discussed above,

10

a valid arbitration agreement exists between Henry and Vantage. The Court therefore rejects Henry's argument with respect to delegation, as it boils down to nothing more than arguing that one cannot agree to delegate the arbitrability of claims without first entering into an arbitration agreement. Accordingly, the Court next addresses whether the parties delegated the arbitrability question to the arbitrator.

In *Henry Schein, Inc. v. Archer & White Sales, Inc.*, the Supreme Court recently addressed the issue of delegating the arbitrability question to an arbitrator. 139 S. Ct. 524 (2019). The Supreme Court stated, "we have held that parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id*. at 529 (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)). "An 'agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce . . . .'" *Id*. (quoting *Rent-A-Center*, 561 U.S. at 70). Thus, when the parties "contract[ually] delegate[] the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue." *Id*.

The arbitration clause at issue states that "[t]he arbitration shall be conducted by, and under the then-applicable rules of, the American Arbitration Association." Doc. 25-1 at p. 12. AAA Commercial Arbitration Rule 7(a) provides, states:

> The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement.

*Id.* at ¶ 20. "By incorporating the AAA Rules, the parties agreed to allow the arbitrator to determine threshold questions of arbitrability." *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769 (8th Cir. 2011); *see also Fallo v. High Tech-Inst.*, 559 F.3d 874, 878 (8th Cir. 2009) ("[W]e

11

conclude that the arbitration provision's incorporation of the AAA Rules . . . constitutes a clear and unmistakable expression of the parties' intent to leave the question of arbitrability to an arbitrator." (citation omitted)).

The arbitration agreement's explicit reference to the AAA rules requires the Court to refer all jurisdictional and arbitrability disputes to the arbitrator. This includes the question of whether this agreement governs Henry's claims. Thus, the Court does not have the power to determine whether this contract and arbitration clause can govern Henry's claims; the arbitrator must do so.

The Court next addresses whether the individual defendants serving on Vantage's board of directors may enforce the arbitration agreement between Henry and Vantage. In her opposition, Henry does not contest that "the claims against Vantage and Vantage's board of directors should remain in the same forum (either in arbitration or not) . . . ." Doc. 32 at p. 13 n.4. Additionally, even though the directors constitute non-signatories, "whether a particular arbitration provision may be used to compel arbitration between a signatory and a nonsignatory is a threshold question of arbitrability." *Eckert/Wordell Architects, Inc. v. FJM Properties of Willmar, LLC*, 756 F.3d 1098 (8th Cir. 2014) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84–85 (2002)). *Eckert* further found that the incorporation of the AAA rules delegated the question of whether the non-signatory could enforce the arbitration agreement. *Id*. Therefore, the Court may not rule on whether the individual defendants can enforce the arbitration agreement and leaves this question to the arbitrator.

In sum, the parties delegated the questions of whether Henry's claims fall within the scope of the arbitration clause and whether the director defendants may enforce that clause to the arbitrator and thus the Court may not decide these questions.

### 3. Individual or class-wide arbitration

The Court must compel arbitration because a valid arbitration agreement exists between Henry and Vantage and the parties delegated the questions of whether the claims fall within the scope the agreement and whether the director defendants may enforce that clause to the arbitrator. *Torres*, 781 F.3d at 968. Defendants argue that the parties must be compelled to individual, not class-wide arbitration, Doc. 26 at pp. 14-15, and Henry offered no response on this specific issue.

As explained in a recent Eighth Circuit opinion, "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Catamaran Corp. v. Towncrest Pharmacy*, 946 F.3d 1020, 1022–23 (8th Cir. 2020) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010)) (emphasis in original); *see also Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1417 (2019) ("Neither silence nor ambiguity provides a sufficient basis for concluding that parties to an arbitration agreement agreed to undermine the central benefits of arbitration itself."). Here, the arbitration clause expressly states "[n]o claim, controversy or dispute may be joined in an arbitration with a claim, controversy or dispute of any other person, or resolved on a class-wide basis." Doc. 25 at p. 12. Accordingly, the Court compels Henry, Vantage, and the director-defendants to arbitration on an individual, not class-wide, basis.

### B. Stay of proceedings

"The [Federal Arbitration Act] generally requires a federal district court to stay an action pending an arbitration, rather than to dismiss it." *Green*, 653 F.3d at 769 (citing 9 U.S.C. § 3) (stating the district court "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement"). In *Green*, however, the Court recognized that

13

district courts sometimes rely upon "a judicially-created exception to the general rule which indicates district courts may, in their discretion, dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration." *Id.* at 669–70. Here, the entire controversy may not be decided by arbitration because the arbitrator may decide that the contract and arbitration clause do not apply to the dispute or that the director defendants may not enforce the arbitration agreement. If that happens, and the Court expresses no opinion on whether it will, Henry may be prejudiced by a dismissal because the statute of limitations may run in the meantime. *Id*. at 770. Thus, the Court stays the action pending arbitration, rather than dismissing it.

IV.    **Conclusion**

Accordingly, the Court grants Defendants' [25] motion to compel individual arbitration of Henry's claims. The Court stays the matter pending arbitration between Henry and Defendants. Henry and Defendants must provide a joint status report regarding the progress of arbitration proceedings no later than July 30, 2021, and must also submit a notice updating the Court no later than 10 days following the conclusion of arbitration proceedings.

The Court directs the Clerk of Court to administratively close this mater. The parties must continue to comply with all orders of the Court, provide status updates to the Court, and notify the Court of any development that may affect the stay of this matter.

So Ordered this 28th day of May 2021.

*SL R. CR*

**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**